IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA A. MARBARKER, | : | CIVIL ACTION NO. **3:CV-06-860** |
| | : | |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c), wherein the Plaintiff, Teresa A. Marbarker, is seeking review of the decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-33, 1381-1383f.

## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed an application for DIB on August 21, 2003, and SSI on December 24, 2003, alleging disability since May 18, 2002, due to a back injury. (R. 142-144, 177, 328-330). The state agency denied her claims initially. (R. 107-110). The Plaintiff filed a timely request for a hearing (R. 101), and two video-conference hearings were held on December 15, 2004 and June 14, 2005. (R. 24-93). At the December 15, 2004 hearing, the Plaintiff, her attorney, and a vocational expert (VE) were present. The hearing was continued because sufficient medical records were not available for the ALJ. (R. 26-29). The Plaintiff, unrepresented by counsel, and a

vocational expert testified at the June 14, 2005 hearing.  (R. 31-93).  On August 10, 2005, the ALJ

issued a decision concluding that the Plaintiff was not disabled.  (R. 13-23).

The Plaintiff requested review of the decision (R. 11).  The Appeals Council denied her

request, thereby making the ALJ's decision the final decision of the Commissioner.  (R. 5).  42 U.S.C.

§ 405(g).  That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs

in support of their respective positions.  (Docs.  7 and 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is

supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988);

*Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988);

*Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the

evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his
> age,  education, and work experience, engage in any other kind of

2

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. § 404.1520(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No.4. 20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. 20 C.F.R. §§404.1520(e)-(f). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff

3

is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). This is Step Five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (R. 13-23). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful work activity since her alleged disability onset date. (R. 17). At steps two and three, the ALJ concluded that the Plaintiff's lumbar spondylolysis, herniated disc and major depressive disorder were severe within the meaning of the Regulations, but not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 17-18). At step four, the ALJ found that the Plaintiff was not able to perform her past relevant work. (R. 19-20). At step five, the ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light work. Using Medical-Vocational Rule 202.21 and the testimony from the impartial VE as a framework, the ALJ found that a significant number of jobs exist in the national economy which the Plaintiff could perform. (R. 21-22). Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. (R. 21). 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## IV.  BACKGROUND.

### A. *Factual Background.*

The Plaintiff, forty-five years-old at the time of the ALJ's decision, was considered a younger individual under the Regulations. (R. 17, 22). 20 C.F.R. §§ 404.1563 and 416.965. She has a high

school education and no further training.  (R. 17, 42-43).

The Plaintiff alleges disability since May 2002, primarily due to her back impairment.  On May 18, 2002, Plaintiff quit her job at Proctor and Gamble because they did not have work suitable for her injury.  (R. 38, 71, 708).  Plaintiff alleges that she sustained a work-related lower back injury in the Spring of 2001.  She subsequently received a worker's compensation settlement of $50,000 in March or April of 2002.  (R. 42).  Plaintiff also receives welfare in the amount of approximately $202.50 per month.  (R. 41).

Plaintiff worked at Proctor and Gamble as a floor technician beginning in 1990.  (R. 38).  Prior to her work at Proctor and Gamble, Plaintiff worked full-time in the payroll department of a factory for six months.  (R. 48, 198).  In 2004, two years after her disability onset date of May 18, 2002, Plaintiff worked at a nursing home.  (R. 46. 198).  Plaintiff quit her job at the nursing home, stating that her body just "gave out."  (R. 46).

Plaintiff complains of pain in her back, numbness in her left leg, pain in her ribs, headaches, arthritis in her neck, and, generally, pain from head to toe.  (R. 74).  She indicated that subsequent to her onset date of May 18, 2002, she suffered from whiplash.  (R. 74).

The record indicates that, since May 18, 2002, the Plaintiff did not undergo any surgery, did not have any physical therapy, and did not treat with a chiropractor for her back pain.  (R. 69-70).  The only treatment Plaintiff used since May 18, 2002 is pain medications.  She testified that she

takes Hydrocodone[1], Tramadol[2], Psychobenzapine, Vicodin, Depakote, Ativan, and Ambien.  (R. 72).  Plaintiff testified that she took up to twenty pills a day:  eight Hydrocodone pills, eight Tramadol pills, and four Psychobenzapine pills per day.  (R. 72).  Plaintiff later testified that this prescription changed to thirty pills a week of Vicodin, and no other pain relievers.  (R. 91).

### B. Medical Background.

The Plaintiff's family doctor, Clarence Maast, M.D., began treating Plaintiff in 2003.  Dr. Maast completed a Lumbar Spine Residual Functional Capacity (RFC) Questionnaire on December 12, 2004.  (R. 273).  Dr. Maast diagnosed Plaintiff with disc disease, depression, anxiety and vertigo. *Id*.  He noted that Plaintiff's symptoms were "severe pain in neck and back followed with severe depression."  *Id*.

Dr. Maast opined that Plaintiff could sit for ten minutes at a time and stand for ten minutes at a time.  (R. 275).  He opined that Plaintiff could sit and stand/ walk for less than two hours in an eight-hour workday.  *Id*.  He believed that Plaintiff needed to walk around approximately every ten minutes, for ten minutes, in an eight-hour workday.  *Id*.  Plaintiff would need a job that required shifting positions, and she would need to take unscheduled breaks every ten to fifteen minutes.  *Id*. Dr. Maast believed Plaintiff could rarely lift and carry less than ten pounds, and never lift and carry ten to fifty pounds.  (R. 276).  Plaintiff could never twist, stoop (bend), crouch/ squat, climb ladders, and climb stairs.  *Id*.  Dr. Maast believed that Plaintiff had significant limitations in doing repetitive

---

[1]  Hydrocodone is a potent analgesic derivative of codeine used as an antitussive and analgesis.  Stemdan's Medical Dictionary, 840 (27th ed. 2000).

[2]  Tramadol is an analgesic drug whose mechanism of action is unusual in that one optical isomer exerts typical opioid-type effects and the other isomer interacts with the reuptake and/ or release of norepinephrine and serotonin in nerve terminals.  Stedman's Medical Dictionary, 1859 (27th ed. 2000).

handling or fingering.  He opined that Plaintiff could use her hands for 20% of the time during an eight-hour day; her fingers for 50% of the time; and her arms for 10% of the time.  *Id.*  He found that Plaintiff would likely be absent from work four days per month due to her impairments.  Lastly, he opined that she is unable to tolerate cold or rain.  (R. 277).  The ALJ assigned this opinion little weight, noting that it was unsupported by the record.  (R. 19).  She noted that these restrictions "seem overly restrictive and are not supported by the remainder of the record."  (R. 20).

Dr. Maast also completed a Mental Residual Functional Capacity (RFC) Questionnaire on December 30, 2004.  (R. 268).  He diagnosed Plaintiff with depression, obsessive compulsiveness, and disc disease.  (R. 268).  He assessed a Global Assessment of Functioning (GAF) score of 25.[3]  The ALJ gave little weight to this opinion because Dr. Maast is not a specialist in this field.  (R. 20, 64).  The ALJ noted "[l]imited weight is accorded the assessments of Dr. Maast, particularly in the area of mental limitations, as he is a family practitioner and this is outside his area of expertise."  (R. 20).

Plaintiff herself testified that she walks all day, back and forth.  She stated that she walks "ten, fifteen, twenty miles" a day, and she has been doing so since 2003.  (R. 76).  Plaintiff testified that she does not know why Dr. Maast stated that she has any kind of limitation in walking because she can walk.  (R. 77).  She stated that she could walk on a flat surface, but could not really walk on concrete.  (R. 77, 90).  The VE testified that the jobs he identified for Plaintiff, inspector and stuffer, usually do not have concrete floors.  (R. 90).  Plaintiff testified that she also bathes and dresses herself.

---

[3]  A GAF score of 25 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM-IV).

Plaintiff treated with Kenneth R. Lattimore, M.D., in 2002 and 2003. (R. 212-214). On January 17 and February 14, 2003, Dr. Lattimore noted that Plaintiff's mood was euthymic[4] and her affect was appropriate. (R. 213-214). Plaintiff denied any hallucinations, delusions, suicidal ideations, or homicidal ideations. *Id.* Plaintiff's orientation, memory and comprehension were intact. Her insight, judgment and sleep were fair, and her appetite was good. Dr. Lattimore recommended Plaintiff continue with her present medications. *Id.*

Dr. Lattimore completed a Physician's Certificate for Proctor and Gamble's Disability Benefit Plan on August 20, 2002. (R. 260). Dr. Lattimore found Plaintiff to be totally disabled as of June 11, 2002. (R. 260). He diagnosed Plaintiff with major depressive disorder and noted her medications. Dr. Lattimore stated that Plaintiff's condition had improved and that she was able to return to work on December 21, 2002. (R. 260).

Mel Barvinchak, M.S.W., L.S.W., completed a similar form in October 2002. He also indicated that Plaintiff was totally disabled as of June 3, 2002. (R. 257).

On December 18, 2003, Plaintiff underwent a consultative examination with Ihab Dana, M.D. (R. 215). Dr. Dana noted that Plaintiff appeared to be in no acute distress. Dr. Dana stated that Plaintiff "is able to move all her joints. Her range of motion in upper joints was well within acceptable range. She is able to get up on the examining table and off. She is [able] to walk on heels and toes and squat and rise from squatting position and arise from a chair." (R. 216.) However, Dr. Dana did note that Plaintiff was in pain, but is able to grasp, sit, bend, talk and walk and lift, and her station and gait are normal. (R. 216-217).

---

[4] Relating to, or characterized by, euthymia (joyfulness; mental peace and tranquility; moderation of mood, not manic or depressed). Stedman's Medical Dictionary, 627 (27th ed. 2000).

Pamela J. Costello, M.D., Ph.D., treated Plaintiff from April 2001 to October 2004. (R. 246-260). Dr. Costello noted a work lumbar injury in March 2002 and lumbar herniated nucleus pulposus (HNP)[5] with low back pain and radiculopathy. (R. 249). Dr. Costello prescribed Bextra, Vicodin and Ativan, and advised that Plaintiff quit smoking, undergo physical therapy, and continue with moderate activity. *Id.*

An April 2001 MRI of the Plaintiff's lumbar spine showed early desiccation of the L4-5 lumbar intervertebral disc, and large central herniated nucleus pulposus of the L4-5 lumbar intervertebral disc (maybe indicative of an extruded herniated disc). (R. 254). A January 2003 MRI of the Plaintiff's lumbar spine showed central L4-5 disc herniation. (R. 252).

## C. State-agency physicians' reports.

Mary Ryczak, M.D., a state-agency physician, reviewed Plaintiff's medical records in December 2003 and completed a Residual Functional Capacity (RFC) Assessment. (R. 220). Dr. Ryczak diagnosed Plaintiff with a herniated disc. She found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk and sit (with normal breaks) a total of six hours in an eight-hour workday; and push and/or pull unlimitedly. (R. 221). Dr. Ryczak found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (R. 180-182).

Dr. Ryczak referenced Dr. Dana's report that Plaintiff was able to get on and off the examining table, could walk on her heels and toes, could squat and rise, and Plaintiff's lumbar

---

[5] The herniation of the nucleus pulposis (NP), a mucoprotein gel located in the posterocentral portion of the disc, through the annulus fibrosis (AF), the concentric bands of fibrous tissue surrounding the NP. http://www.brooks.af.mil/web/consult_service/waiver%20guide/Neurology/Herniated%20Nucleus%20Pulposus.htm

flexion was normal.  (R. 222).

Dr. Ryczak lastly noted that the Plaintiff reports she can prepare meals, use the vacuum, climb most steps, can walk a half-mile on level ground and can lift twenty-five pounds.  The physician ultimately found the Plaintiff's symptoms only partially credible.  (R. 225).

Plaintiff further alleges that her disability stems from depression.  John D. Chiampi, Ph.D., a state-agency psychologist, reviewed Plaintiff's medical records in January 2004.  (R. 228).  Dr. Chiampi completed a Psychiatric Review Technique Form and concluded that Plaintiff's impairments were not severe.  *Id*.  Dr. Chiampi noted there is a history of depression, but there had been no treatment since 2003.  (R. 240).  He referenced Dr. Lattimore's report that Plaintiff's mood was euthymic, her memory and comprehension were intact; her affect was appropriate; and her appetite was good.  (R. 212-214, 240).

Dr. Chiampi evaluated Plaintiff's condition under the requirements of Listing 12.04 (Affective Disorders).  The Supreme Court has held that a claimant must prove that her condition meets every criteria in a listing before she can be considered disabled *per se*.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant is disabled *per se* under Listing 12.04 when she either satisfies the requirements of both 12.04(A) and 12.04(B), or of 12.04(c).  Dr. Chiampi's report found that "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" of Listing 12.04(A). (R. 231).  Plaintiff presented no medical evidence to counter Dr. Chiampi's findings.

Listing 12.04(B) requires that the symptoms described in (A) result in at least two of the following:

1. Marked restriction of activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Marked difficulties in concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.  Dr. Chiampi found there were mild restrictions of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (R. 238).

The requirements of Listing 12.04(C) are:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).  There was one episode of decompensation, but as noted, this was likely due to Plaintiff's noncompliance with medication and drug and alcohol use.  This does not meet Listing 12.04(C)(1) because there are no "repeated episodes of decompensation, each of extended duration."  Dr. Chiampi specifically found that the Plaintiff's

mental impairments were not severe and did not meet Listing 12.04 (C).  (R. 239).  The Plaintiff

offered no expert medical opinion to counter Dr. Chiampi's findings.  We find that there is

substantial evidence to support the ALJ's conclusion that the Plaintiff has not met the requirements

for Listing 12.04 Affective Disorders.

We must stress that it is the claimant's burden to prove that her condition meets or equals

the specific clinical requirements of a listed impairment such as Listing 12.04 before she can be

considered to be disabled *per se* without consideration of vocational factors, such as age, education,

and work experience.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988) (citations omitted).  To be entitled to disability benefits, a claimant must

show that all, not just some, of the criteria for a listing are met.  *Zebley*, 493 U.S. at 530.  The

Commissioner must make the legal determination as to whether an impairment meets or equals a

listing.  *See* 20 C.F.R. § 404.1527(e)(1) and (2).  Substantial evidence supports the ALJ's finding that

the Plaintiff was not suffering from depression at any time through the date of the ALJ's decision.

(R. 20).

Plaintiff was hospitalized twice for mental health evaluations.  She was first hospitalized in

the Spring of 2002, shortly after her brother died.  (R. 54).  Her second hospitalization was in May

2005.  (R. 56).  She was admitted due to "bizarre talking and irrelevant behavior."  (R. 309).  Jay

Shah, M.D., treated Plaintiff and noted that she reported she was feeling "super good" and she

denied any physical complaints.  (R. 309).  Dr. Shah noted that Plaintiff's mother believed she was

decompensating for the past week.  (R. 309).  He also noted that Plaintiff reported that she "does

smoke marijuana."  (R. 309).  Dr. Shah diagnosed Plaintiff with bipolar mood disorder, mania, with

12

psychotic features.   He assessed a GAF of 25.[6]  (R. 310).  Dr. Shah also noted her back injury and

pain and shoulder injury and pain.  (R. 310).

Plaintiff remained hospitalized for eight days, was discharged, and was referred to Rachel

Hare, M.S.W.  (R. 313).  Ms. Hare noted that Plaintiff stated that she "likes marijuana, but says she's

not going to use as illegal, the hospital papers says she 'currently' uses."  (R. 317).  Ms. Hare also

noted that Plaintiff "likes pot; [she] says it's great for her back pain."  (R. 318).  Ms. Hare diagnosed

Plaintiff with bipolar disorder, manic with psychotic features (delusions); lower back pain; financial

stress; her GAF score was 45.[7]

## V.  DISCUSSION.

The Plaintiff contends that the ALJ erred in: (1) failing to satisfy her obligation to fully develop

the record; (2) improperly discounting the opinions of the treating physicians; (3) failing to find that

this case meets a listing withing Appendix 1, Subpart P; (4) failing to find that the Plaintiff is disabled

within the meaning of the Social Security Act when excluding any considerations of alcohol or illegal

substances; and (5) failing to sustain her burden at step five of the sequential evaluation process.

(Doc. 7 at 2).

---

[6]  A GAF score of 25 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM-IV).

[7]  A GAF score of 45 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM-IV).

### A. Whether the ALJ erred in failing to satisfy her obligation to fully develop the record.

The Plaintiff argues that the ALJ did not fulfill her duty to develop the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). The Plaintiff argues that the ALJ should have contacted treating physicians if there was not enough medical evidence in the record. The Plaintiff appeared at the first ALJ hearing with her attorney. At that hearing, the ALJ asked Plaintiff's counsel for medical records that were missing from the file. Plaintiff's attorney indicated that he was expecting to "receive residual functional capacity forms and updated medical records from Ms. Marba[r]ker's treating physician, Dr. Clarence Ma[a]st." (R. 27). The attorney requested that the ALJ leave the record open for ten days. The ALJ stated that she would continue the whole matter so that the record would be complete before any testimony was taken.

The ALJ specifically states that she sent out notice that they needed the medical records updated, however Plaintiff never sent anything to the SSA. Plaintiff's attorney stated that he sent a request for updated medical information to Dr. Maast in November 2004. The ALJ then points out that Plaintiff waited from February 2004 to November 2004 to request this information. The ALJ advised the Plaintiff, "it's going to be up to you to see that I have the updated information." (R. 28). Plaintiff had from December 15, 2004, the date of the first ALJ hearing, to June 14, 2005, the date of the second ALJ hearing to obtain all of her updated medical records. Plaintiff failed to do so and is now alleging it is the ALJ's fault for not having all medical records.

The Regulations state that when the evidence "from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision." 20 C.F.R. § 404.1512(e). After the

14

second ALJ hearing, there was adequate evidence available for the ALJ to render a decision. Initially, there was not adequate evidence of record; thus, the ALJ continued the first hearing to permit more time to obtain medical records.

We recommend a finding that the ALJ sustained her burden to fully develop the record, particularly noting that the ALJ continued the first hearing and advised Plaintiff to obtain the updated medical records.

**B.** **Whether the ALJ erred in improperly discounting the opinions of the treating physicians.**

The Plaintiff also contends that the ALJ erred in not giving controlling weight to Dr. Maast's opinion. (Doc. 7 at 14). Dr. Maast diagnosed Plaintiff with depression, obsessive compulsiveness, and disc disease. (R. 268). The ALJ assigned this opinion little weight, noting that the ultimate opinion as to whether a claimant is legally disabled is reserved to the Commissioner. (R. 19).

As previously noted, Dr. Maast completed a Lumbar Spine Residual Functional Capacity (RFC) Questionnaire on December 12, 2004. (R. 273). He opined that Plaintiff could sit for ten minutes at a time and stand for ten minutes at a time. (R. 275). He opined that Plaintiff could sit and stand/ walk for less than two hours in an eight-hour workday. *Id.* He believed that Plaintiff needed to walk around approximately every ten minutes, for ten minutes, in an eight-hour workday. *Id.* Plaintiff would need a job that required shifting positions and she would need to take unscheduled breaks every ten to fifteen minutes. *Id.* Dr. Maast believed Plaintiff could rarely lift and carry less than ten pounds, and never lift and carry ten to fifty pounds. (R. 276). Plaintiff could never twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. *Id.* Dr. Maast believed that

15

Plaintiff had significant limitations in doing repetitive handling or fingering.  He opined that Plaintiff could use her hands for 20% of the time during an eight-hour day; her fingers for 50% of the time; and her arms for 10% of the time.  *Id.*  He found that Plaintiff would likely be absent from work four days per month due to her impairments.  Lastly, she is unable to tolerate cold or rain.  (R. 277).  The ALJ assigned this opinion little weight, noting that it was unsupported by the record.  (R. 19).  She noted that these restrictions "seem overly restrictive and are not supported by the remainder of the record."  (R. 20).

Dr. Maast also completed a Mental Residual Functional Capacity (RFC) Questionnaire on December 30, 2004.  (R. 268).  He diagnosed Plaintiff with depression, obsessive compulsiveness, and disc disease, and assessed a GAF score of 25.  (R. 268).  Plaintiff argues that the ALJ did not include Dr. Maast's assessments when questioning the VE.  (Doc. 7 at 14).

A treating physician's medical opinion is entitled to controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  Despite the Plaintiff's complaints of pain, physical examinations were normal, her sensations were intact, and her gait was normal.  (R. 248, 264, 265, 288, 290, 291, 298).  Plaintiff herself testified that she walks all day, back and forth.  She stated that she walks "ten, fifteen, twenty miles" a day, that is what she does "all day," and she has been doing so since 2003.  (R. 76).  Plaintiff testified that she does not know why Dr. Maast stated that she has any kind of limitation in walking because she "can walk."  (R. 77).  Plaintiff also stated that she  can prepare meals, use the vacuum, climb most steps, can walk a half-mile on level ground and can lift twenty-five pounds.  (R. 225).

16

The ALJ was also faced with medical opinions from the two state agency sources of record, both of whom provided RFC assessments. (R. 220, 228). When faced with conflicting medical opinions, an ALJ may choose which to credit, as long as her decision is based on substantial evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). In finding that the Plaintiff had the RFC for a limited range of light work, the ALJ ostensibly credited the state-agency physicians' opinions that the Plaintiff had the RFC for light work. (R. 220). Dr. Ryczak, a state-agency physician, diagnosed Plaintiff with a herniated disc. (R. 220). She found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk and sit (with normal breaks) a total of six hours in an eight-hour workday; and push and/or pull unlimitedly. (R. 221). Dr. Ryczak found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (R. 180-182).

Dr. Chiampi concluded that Plaintiff's impairments were not severe; he noted there is a history of depression, but there had been no treatment since 2003. (R. 240). He referenced Dr. Lattimore's report that Plaintiff's mood was euthymic, her memory and comprehension were intact; her affect was appropriate; and her appetite was good. (R. 212-214, 240). Dr. Chiampi's report found that "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" of Listing 12.04(A). (R. 231).

The ALJ accorded significant weight to the opinion Dr. Ryczak, that Plaintiff had the RFC for a limited range of light work. (R. 19). However, the ALJ accorded little weight to the opinion of the Dr. Chiampi, finding no evidence of a severe mental impairment. (R. 20). The ALJ found that the records from Drs. Maast and Lattimore establish that Plaintiff suffered from a severe mental

17

impairment.  (R. 20).

The ALJ further noted that limited weight was given to Dr. Maast's opinion regarding Plaintiff's mental health status because Dr. Maast is not a specialist in this field.  (R. 20, 64).  The ALJ noted, "[l]imited weight is accorded the assessments of Dr. Maast, particularly in the area of mental limitations, as he is a family practitioner and this is outside his area of expertise."  (R. 20).  "Although the opinion of a treating physician is to be given great weight,... a doctor's opinion is probative only when it is 'based on sufficient medical data,'... and relates to areas within a doctor's expertise." *Wakley v. Secretary of Health and Human Services*, 861 F.2d 722 (6th Cir. Nov. 2, 1988) (internal citations omitted).

Lastly, the ALJ noted that the opinions from the social workers were given little weight because they are not acceptable medical sources.  20 C.F.R. §§ 404.1513, 416.913 (identifying acceptable medical sources as only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

**C.  Whether the ALJ erred in failing to find that this case meets a listing within Appendix 1, Subpart P.**

The Plaintiff next argues that the ALJ failed to explain why she did not meet or equal any listed impairments based on her combined impairments of back pain and depression.  The Plaintiff argues that the ALJ should have reviewed Listing 112.04.  However, Listing 112.00 *et seq.*, applies to "children under age 18."  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.00 (A).  The Commissioner notes, "[t]here are significant differences between the listings for adults and the listings for children."  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.00 (A).  The Plaintiff therefore cannot

18

allege that she meets Listing 112.04, as she is an adult individual over the age of eighteen.

The ALJ discussed the relevant listings for spine disorders and affective disorders, Listings 1.04 and 12.04, respectively.  The Plaintiff bore the burden of showing that her impairments met or equaled all of the criteria of the listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  For Listing 1.04, the Plaintiff had to show a disorder of the spine "resulting in compromise of a nerve root or the spinal cord," in addition to evidence of one of the following three: nerve root compression, spinal arachnoiditis, or lumbar spine stenosis.  20 C.F.R. Pt. 404, subpt. P, App. 1, Listing 1.04.  The ALJ noted that there was no evidence of nerve root compression or resulting spinal stenosis in the medical record. (R. 19).  The ALJ also noted that the Plaintiff has not proved an inability to ambulate effectively. (R. 19).  Because the Plaintiff, by not proving compromise of a nerve root compression or spinal stenosis, did even meet her burden of proving she met the requirements of the listing's flush language, there was no reason for the ALJ to review whether the Plaintiff met one of the additional requirements set out in the A, B and C criteria.

The Plaintiff likewise failed to meet her burden with respect to Listing 12.04.  The ALJ discussed the requirements of Listing 12.04 in detail. (R. 19).  To meet or equal Listing 12.04, a claimant must show the medically documented persistence of one of a number of listed symptoms in addition to the requisite level of severity in at least two of four additional criteria.  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A), (B).  The ALJ listed these criteria and analyzed why the Plaintiff met the required level of severity for none of them.  *Id.*  The ALJ first noted that the Plaintiff reports only physical limitations in her activities of daily living.  (R. 19).  She has no difficulties in social functioning. (R. 19). 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B).  Next, the ALJ stated

that the Plaintiff had only some degree of limitation in concentration, persistence, and pace. *Id.*

Finally, the ALJ noted that there was one episode of decompensation, but this was likely due to

Plaintiff's noncompliance with medication and alcohol and drug use. (R. 19). 20 C.F.R. pt. 404,

subpt. P, app. 1, Listing 12.04(B). The ALJ noted that, "[a]t best she has only slight to moderate

limitations," and that no treating sources opined that Plaintiff's impairments meet or equal the

listings. (R. 19).

Each listing requires certain medical findings to be present before it can be met and a

claimant found "disabled." To support a finding that a claimant does not meet or equal a listing, an

ALJ must identify the findings that were not present. *Burnett*, 220 F.3d at 119-20; *Steele v. Barnhart*,

290 F.3d 936, 940 (7th Cir. 2002). Here, the ALJ did just that. Based on the foregoing, we

recommend a finding that the ALJ did not fail to find that this case meets a listing within Appendix

1, Subpart P.

**D.  Whether the ALJ erred in failing to find that the Plaintiff is disabled within the**

**meaning of the Social Security Act when excluding any considerations of alcohol or illegal**

**substances.**

The ALJ is charged with considering a claimant's subjective complaints and with

determining whether the claimant is accurately portraying those complaints. 20 C.F.R.

§ 404.1545(e); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). As in the present case, an

ALJ may give little weight to a claimant's subjective complaints when those complaints are

contradicted by objective medical evidence or by other statements in the record. SSR 96-7p;

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); 20 C.F.R. § 404.1529(c); *Hartranft v.*

*Apfel*, 181 F.3d 358, 362 (3d. Cir. 1999).

The Plaintiff's history of drug use cannot be ignored.  While the ALJ's assessment of Plaintiff's drug use might appear to lend itself to an independent basis for disability, we note that an individual is not considered disabled under the Act if alcoholism and drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled. That is, a claimant is only disabled if she has another disability (in addition to the drug or alcohol addiction) that would exist even if she were not addicted to drugs or alcohol. 42 U.S.C. 423 § (c)(2)(C) (2004).

When Plaintiff was hospitalized in the Spring of 2002, Dr. Shah noted that Plaintiff reported marijuana use. (R. 309). Dr. Shah diagnosed Plaintiff with bipolar mood disorder, mania, with psychotic features.  Plaintiff was discharged and began treating with Rachel Hare, M.S.W. (R. 313). Ms. Hare noted that Plaintiff stated that she "likes marijuana, but says she's not going to use as illegal, the hospital papers says she 'currently' uses." (R. 317). Ms. Hare also noted that Plaintiff "likes pot; [she] says it's great for her back pain." (R. 318).

At the ALJ hearing, Plaintiff testified that she first used marijuana when she was a teenager. (R. 60). Plaintiff claimed that she last used marijuana in April 2005 because she "knew that wasn't working." (R. 60-61). Doctors told Plaintiff she was "self-medicating" with marijuana. (R. 58). Plaintiff testified that she probably used marijuana one to two times a week in 2005. (R. 61). This constitutes substantial evidence supporting the ALJ's determination that the Plaintiff's subjective complaints regarding her pain were not fully credible.  We recommend a finding that the ALJ was correct in determining that Plaintiff was not disabled, despite her drug

use.

### E. Whether the ALJ erred in failing to sustain her burden at step five of the sequential evaluation process.

Lastly, the Plaintiff argues that the ALJ erred in failing to sustain her burden at step five of the sequential evaluation process. The final and fifth step of the sequential evaluation process requires an analysis of whether the Plaintiff, based on her age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy. *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428. In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments. 20 C.F.R. § 404.1523; *Plummer, supra*. Based on the testimony of an impartial vocational expert, the ALJ concluded that, considering the Plaintiff's age, educational background, work experience, and RFC, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (R. 20, 21). Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as an inspector or stuffer. (R. 89-90).

The ALJ found that Plaintiff is capable of performing a limited range of light work. (R. 22). Residual functional capacity is defined as follows:

> (a) *General.* Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.

Your residual functional capacity is what you can still do despite your limitations.

20 C.F.R. § 404.1545(a).  Light work is defined as follows:

> (b) *Light work.*   Light work involves lifting no more than 20 pounds
> at a time with frequent lifting or carrying of objects weighing up to
> 10 pounds.  Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some
> pushing and puling of arm or leg controls.  To be considered
> capable of performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.  If someone
> can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

 20 C.F.R. §404.1567 (b).

When the ALJ was questioning the VE, she specifically asked if Plaintiff could perform her past relevant work.  (R. 85-88).  The VE responded, no.  (R. 85-88).  The ALJ then specifically asked the VE if there are other jobs in the national and regional economy that Plaintiff would be capable of performing.  (R. 88).  The VE responded, yes, and then listed those jobs.  (R. 88).  The VE identified the job of inspector, with 1,050 jobs available in the New York and Northeast Pennsylvania region, and 800,000-plus jobs available in the national economy.  (R. 88-89).  The VE then identified the job of stuffer, with 1,000 jobs available in the New York and Northeast Pennsylvania region, and 750,000-plus jobs available in the national economy.  (R. 89).

The vocational expert was apprised of all the Plaintiff's functional limitations and thus took them into consideration when rendering his opinion.  The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's

ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Clearly, the hypothetical did include all of the Plaintiff's limitations which are supported by the record and based in part on objective tests.  Therefore, there is substantial evidence to support the vocational expert's conclusions.

The ALJ also used Medical-Vocational Rule 202.21 as a framework in her decision-making to conclude there are a significant number of jobs in the national economy that Plaintiff could perform.  (R. 22).

In her decision, the ALJ noted, after careful consideration of the entire record, "the undersigned finds that the claimant retains the following residual functional capacity: she is limited to a range of light work with normal breaks, can occasionally climb stairs, stoop, kneel, crouch, or reach overhead with the bilateral extremities, but never climb ropes, ladders, scaffolds or crawl, can occasionally tolerate exposure to extreme cold, humidity or concentrated exposure to water/ liquids, but never tolerate loud or very loud noise, work in high exposed places or around fast moving machinery on the ground, and because of occasional difficulties with sleep disturbance, depressed mood, anxiety, appetite disturbance, tearfulness, and obsessive thoughts, is limited to unskilled work" (R. 20).  We find that this is supported by the evidence, and the ALJ found the correct RFC and sustained her burden at step five of the sequential evaluation process.

## VI.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be

**DENIED**.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 29, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA A. MARBARKER, | : | CIVIL ACTION NO. **3:CV-06-860** |
| | : | |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 29, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or
report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where

26

required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

        **s/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**Dated: December 29, 2006**